J-A12020-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BALWINDER SINGH | : | |
| | : | |
| Appellant | : | No. 996 EDA 2025 |

Appeal from the Judgment of Sentence Entered October 23, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002481-2023

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:               **FILED JUNE 30, 2026**

Balwinder Singh appeals from his judgment of sentence, entered in the Court of Common Pleas of Delaware County, after he was convicted, following a jury trial, of one count each of unlawful contact with a minor—sexual offenses,[1] indecent assault—person less than 13 years of age,[2] corruption of minors—defendant age 18 or above,[3] and endangering the welfare of children (EWOC).[4]  After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6318(a)(1).

[2] *Id.* at § 3126(a)(7).

[3] *Id.* at § 6301(a)(1)(ii).

[4] *Id.* at § 4304(a)(1).

Singh, the former head priest of the Philadelphia Sikh Society (the Temple) in Millbourne Delaware County, sexually assaulted a then-minor[5] female member of the Temple (victim) on multiple occasions when she was between the ages of five and twelve. *See* N.T. Jury Trial, 7/9/24, at 126 (victim testifying Singh inappropriately touched her "many times throughout [her] childhood"); *id.* at 129 (same); *id.* at 129-30 (victim testifying Singh "touched" her more than 10 times); *id.* 7/11/24, at 15 (sexual abuse forensic interviewer testifying victim told her Singh inappropriately touched her over 50 times). The victim alleged that Singh touched her pubic area, breasts, thighs, and back over and under her clothing and underwear. The criminal behavior occurred in one of the Temple's classrooms (Classroom) when the victim was taking religious music lessons[6] and in a storage closet in an adjoining room where visiting priests would stay overnight in the Temple (Bedroom). *Id.*, 7/10/26, at 172 (video playback describing Temple rooms where victim abused by Singh).

The victim's two cousins were frequently in the classroom, sitting only feet away from the victim, when Singh committed the alleged acts. *Id.* at 133 (victim testifying her cousins were "sometimes" present in the classroom when Singh inappropriately touched her); *id.* at 96, 100 (victim testifying her

_____

[5] The victim was born in November 2001.

[6] Singh taught the victim to play the harmonium, a specialized instrument of the Indian culture that includes a keyboard. Singh and the victim would sit next to each other on the floor of the classroom with the instrument in front of them. *See* N.T. Jury Trial, 7/9/24, at 131; *id.*, 7/10/24, at 59-60.

cousins, but no one else, were "frequently" present when she was abused). The door to the Classroom was often open, but always unlocked, and people would go in and out of the room during the lessons. *See id.*, 7/11/24, at 29, 184 (victim's cousin testifying Classroom door was "not always" open, but "was [] unlocked so anyone could just come in if they wanted"); *id.*, 7/10/24, at 56-58; *id.* at 56 (victim testifying, on cross-examination, that "there were people that came in and out" of the music room during lessons). "Every once in a while," a drummer would be part of the music lesson. *See id.*, 7/11/26, at 189.

In January 2014, when the victim was in seventh grade, she reported the alleged abuse to her middle school counselor, a mandated reporter, who reported the allegations to ChildLine.[7] *Id.*, 7/9/24, at 136, 151; *id.*, 7/10/24, at 13. A Childline report was sent to the Sexual Abuse Center (SAC) in Media, a division of Delaware County Children and Youth Services. The school also contacted the victim's parents to apprise them of the alleged assault. *See id.*, 7/11/24, at 7. On January 27, 2014, Crystal Valdez, a SAC caseworker,

---

[7] ChildLine "is part of a mandated state-wide child protective services program designed to accept child abuse referrals and general well-being concerns." https://www.pa.gov/agencies/dhs/resources/keep-kids-safe/report-child-abuse (last visited 5/6/26). After ChildLine receives information of possible abuse or neglect, it is "transmitted quickly to the appropriate investigating agency." *Id.*

conducted a forensic interview[8] with the victim at the SAC after receiving the ChildLine report.[9]  ***Id.***, 7/10/24, at 134, 184-85, 190.

Following this report, the victim, the victim's parents, and several Temple leaders met at the Temple to discuss the allegations.  The victim's mother testified that, after the school counselor told her about the victim's alleged abuse, she attended several meetings at which Temple leaders were present.  Two of the meetings were held at the home of the Temple president, Durham Singh, and the home of the victim's aunt and uncle.  ***Id.*** at 90-91; ***id.***, 7/11/24, at 10, 12.  Singh denied the allegations.  ***See id.*** at 92 (victim's Mother testifying Singh said, "I did not do that"); ***see also id***. at 168, 177 (Temple president testifying everyone at meetings believed what was being alleged was "misunderstanding").  The victim's father testified that Temple officials told him at the meetings that Singh would be fired from the Temple within a couple months.  ***Id.*** at 145.  However, he was not fired until after the filing of the criminal complaint in 2023.  ***Id.***  The victim's mother testified that

_____

[8] Detective Mark Bucci, a detective in the criminal investigation division of the Delaware County District Attorney's Office, was also present at this interview, albeit behind a two-way mirror.  ***See*** N.T. Jury Trial, 7/10/24, at 18, 43, 134, ***id.***, 7/11/24, at 207.  Detective Bucci worked primarily with child abuse cases; the ChildLine report was ultimately sent to his investigative division.  ***See id.***, 7/11/24, at 200, 205.  The interview was audio-recorded and played for the jury at trial.  ***Id.***, 7/10/24, at 141-43.  ***See id.*** at 143-79.

[9] Valdez also briefly met with the victim at her school on January 9, 2024. ***Id.***, 7/10/24, at 129.  Valdez described this as a "preliminary interview" where caseworkers assess the alleged victim's safety and talk to them briefly to build rapport in an informal setting.  ***See id.***, at 8, 13-17, 182, 185.

she felt pressured during the meetings, was told by Temple officials that "it's not good for the religion," and, ultimately, went to a lawyer's office, where she agreed to sign an document "to [not] proceed [with] the case." *See id.*, 7/11/24, at 14-17, 20-21. The Temple president denied allegations that the Temple agreed to do something for the victim's parents in exchange for withdrawing the criminal complaint. *See id.* at 177.

After the victim's report of the sexual abuse, the Temple installed video cameras in the music and worship rooms and the dining area. *See* Supplemental Narrative of Detective James Young Simpkins, Jr., 7/8/24, at 14. The victim "eventually stopped going" to the Temple for music lessons in 2014, after reporting the abuse to her school counselor. N.T. Jury Trial, 7/10/24, at 62. The victim's mother told Detective Bucci that she wanted to "take [the] complaint back" and go no further with the investigation. *Id.*, 7/11/24, at 20-21; *see also id.* at 208-09 (Detective Bucci testifying victim's mother "was reluctant" to file charges against Singh for fear of being "ostracized" in religious community). The authorities closed out case in 2014. *Id.*

When the victim was twenty-two years old, she disclosed the abuse to a therapist who reported the incident to the Upper Darby Police Department in 2022 and a new ChildLine report was created. *Id.*, 7/10/24, at 83-84. However, that case was eventually closed out. *Id.* at 220. In January 2023, the victim reached out to an Upper Darby detective, and the investigation was reinstated. *Id.* at 85-86; *id.* at 221 (victim gave detective statement about

abuse). Detective James Young Simpkins, Jr., a detective with the Delaware County Criminal Investigation Division Child Abuse Unit, was assigned to the reinstated matter. *Id.* at 217, 221. Detective Simpkins turned over information from the 2014 incident to the Upper Darby Police, spoke to the Temple president and the victim's cousin, and talked to the victim's parents, who disclosed the meetings they had had with Temple officials in 2014, as well as the alleged contract they had signed with a lawyer.[10] *Id.* at 222-24.

Following a three-day jury trial, Singh was convicted on July 12, 2024, of the above-mentioned charges. Following the verdict, the Commonwealth moved to revoke Singh's bail, which the court denied. *See id.*, 7/12/24, at 128-29, 133. The court set bail at 10% of $300,000.00 and ordered Singh to remain on electronic home monitoring, subject to the following pretrial bail terms: no contact with minors, including the victim; prohibited from Temple Saturdays and Sundays; and permitted to attend Temple only for religious services when children not present. *Id.*, 7/12/24, at 135; *see also id.* at 132 (defense counsel noting Singh's non-monetary conditions "have always been that he hasn't been around children [and has n]ot violated his conditions at

_____

[10] Detective Simpkins testified that he was unable to get a copy of the alleged contract signed between the victim's parents and Temple officials in 2014. *See id.*, 7/11/24, at 223-24. Detective Simpkins also interviewed an alleged second victim of Singh's who claimed that she was also sexually assaulted by him when she was receiving music instruction in the Temple as a child. *See* N.T. Post-Sentence Motion/Bail Revocation Hearing II, 3/18/25, at 64-65. That allegation formed the basis for a supplemental investigation report. *See id.* at 65. That alleged victim did not testify at trial.

the [T]emple when he goes for worship. **He's not there when kids are there**.") (emphasis added). Sentencing was deferred pending the preparation of a Sexual Offenders Assessment Board evaluation. *Id.* at 134. On July 22, 2024, Singh filed a motion for extraordinary relief, *see* Pa.R.Crim.P. 704(B), seeking a judgment of acquittal on the unlawful contact with a minor offense. Following a hearing, the court denied the motion. On October 23, 2024, the court sentenced Singh to an aggregate term of incarceration of 2 to 6 years,[11] with a consecutive four years of probation.

Singh filed a timely notice of appeal and petition for bail pending appeal. *See* Pa.R.Crim.P. 521(B). On October 31, 2024, counsel filed a praecipe to discontinue the appeal. On November 1, 2024, Singh filed a post-sentence motion seeking a new trial and reconsideration of sentence. On December 18, 2024, the court entered an order granting Singh's motion for bail pending disposition of his post-sentence motion, placing him on electronic monitoring, and setting bail at $30,000.00 (10% of $300,000.00). *See* Bail Hearing, 12/18/24, at 18. In addition, the court ordered the following non-financial bail conditions, read into the record by the Delaware County Deputy Director of Pretrial Bail: Singh to have no direct or indirect contact with the victim;

_____

[11] The court sentenced Singh to 1 to 3 years of incarceration on each of the three offenses—all standard-range sentences. *See* 204 Pa. Code § 303.16. The EWOC charge was ordered to run concurrently to the corruption of minors charge and consecutive to the unlawful contact with minors and indecent assault of person less than 13 charges. The corruption of minors charge was ordered to run consecutively to the charges of unlawful contact with minors and indecent assault of person less than 13.

Singh to have no direct or indirect contact with anyone below the age of 16; and Singh prohibited from attending Temple when minors are present or during the times that children's programs take place. *See id.* at 7-8. *See also id.* at 20-21 (trial court stating Singh "**not to be at the [T]emple when juveniles are present**, he's to have no contact with minor, minors or anyone under 18 years of age") (emphasis added). At his bail hearing, Singh represented to the court that he had a heart condition that was exacerbated by his incarceration.[12]

On January 9, 2025, Singh filed an amended post-sentence motion.[13] On February 5, 2025, the Commonwealth filed a motion to revoke Singh's bail. *See* Pa.R.Crim.P. 536(A). On February 6, 2025, the court held a hearing on the post-sentence motions. On February 25, 2025, the court extended the time within which to consider the amended post-sentence motions. On March 18, 2025, the court held a hearing; following the hearing, the court revoked Singh's bail, concluding that surveillance video footage from the Temple

_____

[12] Notably, the Commonwealth pointed out at Singh's bail revocation hearing that the prison system had no medical documentation to support Singh's claim. *See* N.T. Post-Sentence Motion/Bail Revocation Hearing II, 3/18/25, at 67-68. However, the court found at the second bail revocation hearing that Singh has or appears to have significant medical concerns, including coronary artery and heart disease. *Id.* at 74.

[13] On May 22, 2026, Singh's amended post-sentence motion was included in a supplemental record to this Court. The Director of the Delaware County Office of Judicial Support certified that this motion "[is part of a] true and correct cop[y] of all materials filed in the Court of Common Pleas—Delaware County— and constitute[s] the record for [this case]." *See* Original Record Certification in CP-23-CR-0002481-2023, 5/22/26.

showed Singh in the same room as a young child on February 3, 2025. On March 21, 2025, the court denied Singh's amended post-sentence motion.

Singh filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Singh presents the following issues for our consideration:

(1)    Did the trial court err and abuse its discretion by denying [] Singh's request for a mistrial after the Commonwealth improperly addressed a jury instruction that was irrelevant in the trial and would never have been given under the circumstances of this case during their closing argument relating to a defendant as a testifying witness when [] Singh chose not to testify?

(2)    Did the trial court err and abuse its discretion by denying [] Singh's request to dismiss his case as a result of prosecutorial misconduct when the Commonwealth improperly addressed a jury instruction during its closing argument that [is] only given by a trial court when a defendant is a testifying witness, when in the case Mr. Singh chose not to testify?

(3)    Did the trial court err and abuse its discretion in allowing [the victim's father] to testify, over [Singh's] objection, despite his proposed testimony being cumulative and overly prejudicing [] Singh, as it was the same information to which [the victim's mother] previously testified?

(4)    Was the evidence insufficient to prove [] Singh guilty because the Commonwealth alleged by [i]nformation that [] Singh committed certain offenses on or about January 2022, yet[,] at trial, the Commonwealth, without seeking leave to amend the [b]ills of [i]nformation[,] exclusively presented evidence concerning events from 2013 and/or 2014?

(5)    Did the trial court err and abuse its discretion by allowing the jury verdict slip to: (1) include [EWOC] as a third-degree felony, an offense not charged in the [i]nformation; and (2) [] not include the date of the alleged offenses?

> (6)     Did the trial court err and abuse its discretion in denying []
>         Singh's post-sentence motion seeking a new trial because
>         the verdicts were against the weight of the evidence on
>         [c]ounts 1-4, as the testimony plainly showed the
>         complainant to be wholly incredible presenting varying
>         versions of events?
>
> (7)     Did the trial court err and abuse its discretion in denying []
>         Singh's post-sentence motion challenging the discretionary
>         aspects of his sentence, as the sentence imposed was unjust
>         and excessive, due to the [t]rial [c]ourt's violation of
>         provisions of the [s]entencing [c]ode by improperly citing
>         the seriousness of the offenses as aggravating factors and
>         disregarding ample mitigating evidence in fashioning []
>         Singh's sentence?
>
> (8)     Did the trial court err and abuse its discretion in revoking []
>         Singh's post-sentence bail based on [] Singh's purported
>         failure to comply with the imposed bail condition limiting his
>         attendance at his [T]emple, when the conditions for bail on
>         the handwritten order granting bail differed materially from
>         the typed conditions of bail delivered to [] Singh at the time
>         he was released on bail, and when [] Singh was[,] in fact[,]
>         in compliance with his bail conditions as were given to him
>         by the court?

Appellant's Brief, at 7-10.

In his first two issues, Singh claims the court erred in denying his motion for a mistrial after the Commonwealth's attorney, in her closing argument, improperly commented on his decision not to testify. Specifically, Singh contends the prosecutor cited "an inapplicable jury instruction" that highlighted the fact Singh chose not to testify at his own trial. Appellant's Brief, at 18.

"[R]eview of a trial court's denial of a motion for mistrial is limited to determining whether the trial court abused its discretion." *Commonwealth v. Brooker*, 103 A.3d 325, 332 (Pa. Super. 2014). "An abuse of discretion is

- 10 -

not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." *Id.*

> It is axiomatic that a prosecutor may not comment adversely on a defendant's refusal to testify with respect to the charges against him since such commentary would compromise the defendant's privilege against self-incrimination and the defendant's constitutional presumption of innocence. This is so because "allowing the prosecution to comment on the accused's failure to testify is, in effect, allowing the failure to take the witness stand to be used as evidence against him, which in the minds of the jurors would be indicative of guilt.

*Commonwealth v. Randall*, 758 A.2d 669, 681 (Pa. Super. 2000). However, it is well-established that "[s]uch comments are improper only if they **unequivocally** call attention to the defendant's failure to testify." *Id.* (emphasis added), citing *Commonwealth v. Kloch*, 327 A.2d 375, 389 (Pa. Super. 1974). However, where a trial court issues a proper no-adverse inference instruction during the final jury charge directing the jury that no adverse inference should be drawn from a defendant's refusal to testify, we presume that the jury followed the trial court's instructions. *See Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016).

Instantly, Singh claims the following comment from the prosecutor in closing arguments violated his right to a fair and impartial jury trial:

> And look, you heard that the Defendant denied his abuse during the testimony. There's actually an instruction of the law that is read at times. It talks about how the Defendant has a vital

- 11 -

interest in the outcome of this case. The one person [who] has every reason to lie here, is Balwinder Singh.

N.T. Jury Trial, 7/12/24, at 81. Following counsel's closing argument, the trial court gave the jury a no-adverse inference charge, instructing the jury that it was entirely up to Singh to decide whether he wanted to testify and that he has "an absolute right founded on the Constitution to remain silent." *See id.* at 103.

Viewing the entirety of the prosecutor's closing argument, we do not find that the brief reference to the irrelevant jury charge "unequivocally call[ed] attention to" Singh's failure to testify at trial. *Kloch*, *supra*. Indeed, it is clear that the prosecutor's comment was in direct response to the defense's closing argument that focused largely on the victim's alleged lack of credibility. In fact, the prosecutor was referring to out-of-court statements made by Singh denying his guilt and not the fact that he chose not to testify. Moreover, in light of the fact that the trial court gave a no-adverse inference instruction to the jury, any perceived impropriety was quelled, as we presume the jury followed the court's instructions. *Cash*, *supra*.

In his next issue, Singh claims the trial court erred when it permitted the victim's father to testify, over Singh's objection, where the father's proposed testimony was both cumulative and overly prejudicial. Specifically, Singh contends the victim's father's testimony consisted of the same information to which the victim's mother had previously testified.

> The threshold inquiry with the admission of evidence is whether the evidence is relevant. Unless otherwise prohibited by law, all relevant evidence is admissible; all irrelevant evidence is

- 12 -

inadmissible. Pa.R.E. 402. The Pennsylvania Rules of Evidence defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

***Commonwealth v. Flamer***, 53 A.3d 82, at 88 n.5 (Pa. Super. 2012) (citation omitted). However, the court may exclude relevant evidence if its probative value it outweighed by a danger of . . . needlessly presenting cumulative evidence." Pa R.E. 403. Cumulative evidence is defined as additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence. ***Commonwealth v. G.D.M., Sr.***, 926 A.3d 984, 989 (Pa. Super. 2007), citing Black's Law Dictionary, Seventh Ed., at 577. However, evidence that strengthens or bolsters existing evidence is corroborative, not cumulative, evidence. ***Id.***

Although the victim's father's testimony did overlap with several areas of his wife's testimony, the victim's father offered new facts regarding the specifics of the 2014 meetings with Temple leaders. In particular, the victim's father was the only witness to testify that Temple leaders told him they were going to fire Singh in exchange for ending the investigation. Moreover, the victim's father's testimony was corroborative, not cumulative, of his wife's testimony. Specifically, the father's testimony bore on the victim's delay in reporting the assaultive behaviors, gave details about why the initial 2014 investigation was ultimately closed, and also included testimony about not remembering anyone classifying the events as just a "misunderstanding."

Accordingly, we find no merit to this claim. *Flamer*, *supra*; *G.D.M., Sr.*, *supra*.

In his next issue, Singh argues that the Commonwealth presented insufficient evidence to prove he was guilty of all of the offenses for which he was charged because the criminal information listed the offense date as January 2022, but, at trial, the Commonwealth only presented evidence that the criminal acts occurred in 2013 and/or 2014. *See* Appellant's Brief, at 34. Moreover, Singh claims that the court should have required that the Commonwealth seek to amend its bills of information where it "almost certainly learn[ed] through the course of its investigation that the previously indicated time period was incorrect." *Id.* at 36.

"The purpose of the information is to advise the accused of the allegations and the crimes charged, to give sufficient notice to allow the opportunity to prepare a defense, and to define the issues for trial." *Commonwealth v. Kisner*, 736 A.2d 672, 674 (Pa. Super. 1999). It is well-established that

> It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty[.]" *Commonwealth v. Jette*, [] 818 A.2d 533, 535 (Pa. Super. 2003) (citation omitted). The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. *Commonwealth v. Gibbons*, [] 784 A.2d 776 ([Pa.] 2001).
>
> However, "[d]u[e] process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. *Commonwealth v. Devlin*, [] 333 A.2d 888, 892 ([Pa.]

- 14 -

1975).  Additionally, "indictments must be read in a common[-]sense manner and are not to be construed in an overly technical sense." ***Commonwealth v. Einhorn***, [] 911 A.2d 960, 978 (Pa. Super. 2006) (quoting ***Commonwealth v. Ohle***, [] 470 A.2d 61, 73 ([Pa.] 1983)). Permissible leeway regarding the date provided varies with [] the nature of the crime and the rights of the accused. [***Einhorn***, 911 A.2d at 978].  ***See*** Pa.R.Crim.P. 560(B)(3) [(] it shall be sufficient for [] Commonwealth to provide in []information, if [] precise date of [] offense is not known, [] allegation that [] offense was committed on or about any date within [] period fixed by the statute of limitations[)].

> ***Commonwealth v. Koehler***, 914 A.2d 427, 436 (Pa. Super. 2006).  Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct."  [] ***G.D.M., Sr.***, 926 A.2d [at] 990 [] (quoting ***Commonwealth v. Groff***, [] 548 A.2d 1237, 1242 (Pa. Super. 1988).  This is especially true when the case involves sexual offenses against a child victim.  ***Id.***

***Commonwealth v. Brooks***, 7 A.3d 852, 857-58 (Pa. Super. 2010)

(headnotes and page numbers omitted).

Here, although the Commonwealth listed January 20, 2022, as the offense date of each of Singh's charges in the bill of information, the affidavit of probable cause attached to the criminal complaint states that the victim alleged the assaults occurred when she was between the ages of five and twelve.  ***See*** Police Criminal Complaint, Affidavit of Probable Cause, 3/28/23. Where the allegations involved a continuing course of conduct against a child victim, the Commonwealth is given leeway in proving when the crimes occurred.  ***See Brooks***, ***supra***.

Moreover, Singh fails to allege how he was prejudiced by the date on the information or how it rendered him unable to prepare a defense to the

criminal charges. Thus, in light of the clear language in the criminal complaint and the affidavit of probable cause that put him on notice of the alleged continuing course of criminal conduct, we find no merit to this claim. ***See id.*** at 860 ("[I]f any due process violation in fact occurred, it must yield to the rights of the victims.").

In his next issue, Singh contends that the jury verdict slip improperly graded the EWOC charge as a third-degree felony, where the criminal information did not allege a "course of conduct" for that offense. Additionally, Singh asserts that court erred by not requiring that the verdict slip include the date of the alleged EWOC offenses.

"A claim that the court improperly graded an offense for sentencing purposes is a non-waivable challenge to the legality of sentence." ***Commonwealth v. Hoffman***, 198 A.3d 1112, 1123 (Pa. Super. 2018); ***Commonwealth v. Popow***, 844 A.2d 13, 17 (Pa. Super. 2004).

Instantly, Singh was convicted under subsection 4304(a)(1) of the EWOC statute, which provides that "[a] parent, guardian[,] or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). An offense under section 4304 is typically graded as a first-degree misdemeanor unless "the actor engaged in **a course of conduct** of [EWOC]" or "created a substantial risk of death or serious bodily injury," in which cases the offense is graded as a third-degree

- 16 -

felony. ***Id.*** at § 4304(b)(1)(i)-(iii) (emphasis added). ***See also Commonwealth v. Kelly***, 102 A.3d 1025, 1031 (Pa. Super. 2014) (noting "course of conduct" language in EWOC statute used in grading of offense, as opposed to element of offense, and pointing out that EWOC statute does not define term, but that "the phrase is clearly used in that context to differentiate the penalties for single and multiple endangering acts").

In ***Popow***, ***supra***, our Court found that in order to grade an EWOC charge as a third-degree felony, "the Commonwealth must allege in the information and present evidence at trial of the additional factor of 'course of conduct,' and the jury must be instructed on such." ***Id.*** at 18. Here, the information charged Singh with a generic subsection 4304(a)(1) EWOC charge, graded as a third-degree felony, and indicated that it occurred on or about January 20, 2022. ***See*** Information, 6/15/23 at 1. ***See also id.*** (information listing Count 4 as "Endangering the Welfare of Children— Parent/Guardian/Other Commits Offense—(F3)"). However, the affidavit of probable cause attached to the criminal complaint avers that the victim stated Singh began sexually assaulting her when she was "around the age of five [and that t]hese assaults occurred from when she was in first grade until she disclosed to a staff member in 2014 when she was in seventh grade at the age of twelve years old." Affidavit of Probable Cause, 3/28/23, at 1. Thus, factually, the affidavit of probable cause alleges a course of conduct as it relates to Singh's behavior for purposes of grading his EWOC conviction.

At Singh's preliminary hearing, defense counsel claimed that the Commonwealth did not prove a course of conduct as it related to the EWOC charge. **See** N.T. Preliminary Hearing, 5/11/23, at 23-24. However, at the conclusion of trial when the court was about to instruct the jury, defense counsel stated:[14]

> Your Honor, our position is, the [d]efense['s] position is that it was charged as 4304[(b)]. It was charged as a felony of the third degree. I'm not asking for a lesser included [off]ense. I'm not asking for the charge of 4304[(a)], which would be a misdemeanor offense. I'm asking that the Commonwealth be required to prove what they charged and **what they charged was, there was a course of conduct.** So[,] I'm not asking it to be on the verdict slip. I'm asking it to be read[] as you put the charge[ to the jury.]

N.T. Jury Trial, 7/11/24, at 241 (emphasis added). **See also id.** at 243 (defense counsel telling trial judge he does not object to subsection 4304(b) instruction given to jury). In fact, both attorneys told the trial judge that they had no objection to the final version of the verdict slip and had nothing else to address with respect to the jury instructions. **Id.**, 7/12/24, at 6. Later, and without any objection by the parties, the court told counsel it was going to use the Supreme Court's Standard Criminal Jury Instruction 15.4304A[15] for

_____

[14] This discussion among counsel and the trial judge occurred in the robing room. **See id.** at 236.

[15] Pennsylvania Standard Suggested Jury Instructions (Crim), § 15.4304A states:

*(Footnote Continued Next Page)*

the EWOC charge "**with the enhancement question as question number two** [on the verdict slip]."[16] ***Id.*** at 5-7 (emphasis added). ***See id.*** at 110

_____

> An Endangering the Welfare of a Child conviction also requires a finding that four elements have been met beyond a reasonable doubt:
>
> > First, that the defendant endangered the welfare of the child by violating a duty of care, protection, or support.
> >
> > Second, that the defendant endangered the welfare of the child knowingly. A person's conduct is knowing when he or she is aware that it is practically certain that his or her conduct will cause a particular result.
> >
> > Third, that the defendant was at the time a parent, guardian, person supervising the welfare of the child under the age of 18, or a person that employs or supervises such a person[.]
> >
> > Fourth, that the child was under the age of 18 years at the time of the endangering.

Pa. Standard Suggested Jury Instructions (Crim), §15.4304A (2008).

[16] Relevantly, the jury verdict slip read as follows on the EWOC charge:

### D. Endangering the Welfare of a Child

> Did Defendant Balwinder Singh, commit the offense of Endangering the Welfare of a Child?

_____

GUILTY or NOT GUILTY

> **I.    Did the defendant engage in a course of conduct of endangering the welfare of a child?**

*(Footnote Continued Next Page)*

(judge asking jury to "pay attention to" two questions on verdict slip that have "internal connection between one part of the question and another").

The trial judge instructed the jury on the EWOC charge as follows:

Endangering the welfare of a child. The Defendant has been charged with endangering the welfare of a child. To find the Defendant guilty of this offense, you must find that each of the following elements has been proven beyond a reasonable doubt. First, that the Defendant endanger[ed] the welfare of the child by violating a duty of care, protection, or support. Second, that the Defendant endanger[ed] the welfare of the child knowingly. A person's conduct is knowing when he or she is aware that it is practically certain that his or her conduct will cause a particular result. Third, that the Defendant was at the time a parent[,] guardian[, or] person supervising the welfare of the child under the age of 18. Where a person employs or supervises such a person, the term supervising the welfare of a child means a person other than a parent or guardian that provides care, education, training[,] or control of a child. Fourth, that the child was under the age of 18 years old at the time of the endangering. If[,] after considering all the evidence[,] you find that these elements have been proven beyond a reasonable doubt, you should find the Defendant guilty. If you do so [] find, **you should indicate on the verdict slip whether you also find the following element proven beyond a reasonable doubt. Whether there has been a course of conduct of endangering the welfare of a child by the Defendant. A course of conduct means a pattern of actions composed of more than one act over a period of time[,] however short[, e]videncing a continuity of conduct.**

N.T. Jury Trial, 7/11/24, at 98-99 (emphasis added).

_____

_____

Yes or No

Verdict Slip, 7/15/24, at 3 (unpaginated) (emphasis in original and added).

- 20 -

Here, because the Commonwealth alleged facts in the bill of information that Singh sexually assaulted the victim over the course of almost seven years on multiple occasions and because the trial court instructed the jury on the definition of course of conduct as it relates to an EWOC charged as a third-degree felony, we find no merit to Singh's issue. **Popow**, **supra**.

Next, Singh alleges that the trial court erred in not requiring that the Commonwealth amend the verdict slip to include the actual dates that Singh allegedly committed the EWOC offenses. Because Singh fails to include any case law or citation to authority to support his claim, we find it waived. **See** Pa.R.A.P. 2119(a); **see also Commonwealth v. Murchinson**, 899 A.2d 1159, 1162-63 (Pa. Super. 2006) (appellant's claims waived under Rule 2119(a) for failure to develop argument with specific references to relevant caselaw to support claims).

Next, Singh claims that the trial court abused its discretion in denying his post-sentence motions because the verdicts were against the weight of the evidence where the victim was "wholly incredible [and] present[ed] varying versions of events." Appellant's Brief, at 9. Specifically, Singh argues that the verdict shocked one's sense of justice "based on the numerous inconsistencies with the [victim's] story, her lack of credibility, and the improbability that an individual who was inappropriately touched by a high ranking member of the community would continue to be put in a position to be abused for an extended period of time[.]" **Id.** at 41.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations omitted). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge" when reviewing a weight claim. *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013), citing *Commonwealth v. Farquharson*, 354 A.3d 545 (Pa. 1976).

It is the trial court's duty to first pass upon the issue and then our duty, as an appellate court, to review the trial court's exercise of discretion. *Widmer*, *supra* at 753. We may not review the underlying question of whether the verdict is against the weight of the evidence. *Id.*

Instantly, Singh filed his original post-sentence motion with the court on November 1, 2024. However, because defense counsel had been appointed to represent Singh just days before the filing of the motion, counsel requested leave to file a supplemental post-sentence motion, if necessary, once he had the opportunity to review all trial transcripts. *See* Defendant's Post-Sentence Motion, 11/1/24, at 6. On January 9, 2025, counsel filed an

amended post-sentence motion. On January 27, 2025, the docket reflects that the Commonwealth filed a response and supportive brief to Singh's amended post-sentence motion. *See* Criminal Docket Entry for CP-23-CR-0002482-2023, at 14. On February 18, 2025, Singh filed a motion for extension of time to decide his amended post-sentence motion, which the court granted on February 25, 2025. *See* Pa.R.Crim.P. 720(B)(3)(b).[17] Hearings were held on the motion. The court denied Singh's post-sentence motion[18] on March 21, 2025, noting in its denial order that "[a]lthough not docketed as of March 18, 2025, the Court also considers the [a]mended [p]ost[-s]entence [m]otion . . . presented by [] Singh and shared with the [c]ourt and the Commonwealth on January 9, 2025, **via email**." Trial Court Order, 3/21/25, at n.2 (emphasis added). *See also* Commonwealth's Response to Defendant's Amended Post-Sentence Motion and Supportive Brief, at ¶ I(l.); Defendant's Motion for Extension of Time to Decide Amended Post-Sentence Motion, 2/17/25, at 2 ("Undersigned counsel then filed an Amended Post-Sentence motion and Supplemental Brief.").

Here, although the trial court and the Commonwealth acknowledge that Singh presented his amended post-sentence motion to them "on January 9,

_____

[17] Singh moved for, and the court granted, a 30-day extension within the 120-day dispositional period. *See id.* Moreover, the court decided the motion within the 30-day extension period. *Id.*

[18] In its order denying Singh's post-sentence motion, the court cites to both Singh's November 1, 2024 post-sentence motion and his January 9, 2025 amended post-sentence motion when listing his issues. *See* Trial Court Order, 3/21/25, at 3.

2025, via email," Trial Court Order, 3/21/25, at n.2, the trial court certified a copy of the motion in a supplemental record to this Court on May 22, 2026. *See supra* at note 13; *see also* Original Record Certification for CP-23-CR-0002481-2023, 5/22/26 (noting director of Delaware County Office of Judicial Support[19] certified motion "[is part of a] true and correct cop[y] of all materials filed in the Court of Common Pleas—Delaware County— and constitute[s] the record for [this case]."). *Cf. Commonwealth v. Walker*, 878 A.2d 887, 888-89 (Pa. Super. 2005) (treating defendant's improperly-filed post-sentence motions as nullity where motions and the order denying them did not appear in either certified record or on docket and there was no evidence they were filed with clerk of courts). Thus, unlike the circumstances in *Walker*, *supra*, we may consider Singh's amended post-sentence motion in addressing his weight claim on appeal.[20] *See* Pa.R.A.P. 1921 (appellate court review limited by contents of certified record); *see also* 42 Pa.C.S.A. § 2756(a)(1) (all documents in criminal matter must be filed with clerk of courts in order to become part of certified record).

---

[19] The director of the Delaware County Office of Judicial Support oversees operations which were previously split between the Office of the Clerk of Courts and the Office of the Prothonotary. *See* https://c.ntc-us.com/ojs (last visited 5/26/26).

[20] We remind the trial court that the court must ensure that such motions are properly filed with the clerk of courts and certified as part of the original record in order for us to consider them on appeal.

In both his original and amended post-sentence motions, Singh alleged the following weight of the evidence claim:

> 2. [] Singh avers that the verdict finding him guilty is against the weight of the evidence and shocks the conscious of the Court, because **the evidence was insufficient** to establish that [] Singh committed the offenses for which he was charged.
>
> 3. Based on the foregoing, no reasonable trier of fact could find that the Commonwealth proved [its] case beyond a reasonable doubt.
>
> 4. The Court should therefore grant a new trial due to a verdict that goes against the weight of the evidence.

Defendant's Post-Sentence Motion, 11/1/24, at 5 (emphasis added); Defendant's Amended Post-Sentence Motion, 1/9/25, at 5-6 (emphasis added). Singh raises a weight claim based upon the victim's lack of credibility or inconsistent statements and testimony for the first time in his Rule 1925(b) statement and then, later, in his appellate brief. *See* Pa.R.A.P. 1925(b) Statement, 5/16/25, at 2; *see also* Appellant's Brief, at ii, 9, 19, 40-44. Thus, because he failed to raise that specific argument before the trial court before sentencing or in his post-sentence motion, we find it waived. *See* Pa.R.A.P. 302(a); Pa.R.Crim.P. 607(A)(1-3).

With regard to the weight argument Singh did preserve for appeal, we note that it is well-established law that "[a] motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Widmer*, *supra* at 751. *See also Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011) (defendant's claim "weight of the evidence was not sufficient to uphold

[his] conviction . . . conce[eded] that there is sufficient evidence"). A true weight of the evidence claim "contends the verdict is a product of speculation or conjecture." *Commonwealth v. Woody*, 679 A.2d 817, 819 (Pa. Super. 1996).

We conclude that Singh did not raise a proper weight of the evidence claim in his post-sentence motions. At best, he presented a boilerplate sufficiency claim and, at worst, he conflated weight and sufficiency of the evidence challenges. Thus, we find the claim waived. *See Commonwealth v. Rivera*, 238 A.3d 482, 497 (Pa. Super. 2020) (weight argument waived where appellant raised "only a boilerplate weight claim in his post-sentence motion" and "combine[d] his sufficiency and weight challenges"); *Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019) (appellant waived weight claim where appellate brief conflated weight and sufficiency claims and did not, otherwise, develop weight claim).

In his next issue, Singh asserts that the trial court erred and abused its discretion in denying his post-sentence motion challenging the discretionary aspects of his sentence. Specifically, he claims in the argument section of his appellate brief that the sentence imposed was unjust and excessive and that the trial court improperly considered the seriousness of the offenses as aggravating factors, while disregarding mitigating evidence. *See* Appellant's Brief, at 44. However, in his Pa.R.A.P. 2119(f) statement, Singh states that the trial "court erred because it failed to state on the record at the time of

sentencing **the reasons for exceeding the Guidelines**." *Id.* at 6 (emphasis added).

A challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014). Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in the following four-pronged analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010), citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

Singh has met the first three parts of the four-prong *Moury* test. Thus, we confine our review to Singh's Rule 2119(f) statement to determine whether he has raised a substantial question. *See Commonwealth v. Goggins*, 748 A.2d 721, 726 (Pa. Super. 2000) (en banc) (holding this Court reviews Rule 2119(f) statement to determine whether appellant has raised substantial question). We conclude that Singh raises a substantial question. *See Commonwealth v. Warren*, 84 A.3d 1092, 1097 (Pa. Super. 2014) (when sentencing beyond ranges recommended by sentencing guidelines, trial court must state reasons for departing from guidelines on record).

Even though Singh has raised a substantial question, we find no merit to his claim. Instantly, Singh was sentenced in the standard range of the Guidelines. *See* 204 Pa. Code § 313.16. Therefore, the trial judge was not required to state reasons on the record for deviating from the guidelines when, in fact, there was no deviation. *See Commonwealth v. Rodda*, 723 A.2d 212, 214-16 (Pa. Super. 1999) (when court deviates from sentencing guidelines it must indicate, on record, its understanding of suggested sentencing ranges and that it "consider[ed] the guidelines in the measured, rational fashion contemplated by the Sentencing Code"). Thus, Singh's claim that the court erred by not stating why the trial judge's sentence exceeded the Guidelines is not only inaccurate but affords him no relief.[21]

Finally, in his last issue, Singh alleges that the trial court erred and abused its discretion when it revoked Singh's post-sentence bail based on his purported failure to comply with a bail condition that restricted his attendance at the Temple. Specifically, Singh contends he did comply with the court's

_____

[21] As the trial court aptly acknowledges, it considered the information in a pre-sentence investigation report and weighed those considerations with the mitigating statutory factors when it imposed a standard-range sentence. *See* Trial Court Opinion, 6/30/25, at 16-17. Moreover, it crafted a "well-considered and individualized sentence . . . which appropriately took into account the general standards for sentencing, including relevant information regarding [Singh's] character and rehabilitative needs." *Id.* at 17. Furthermore, the court considered the fact that Singh sexually abused the victim at the tender age of five until she was twelve—"a significant portion of her childhood"—and the fact that Singh was in a position of authority over the victim in his capacity as her religious music instructor. *Id.* Finally, the court considered Singh's lack of a prior record and his alleged heart condition. *Id.*

bail conditions where the conditions on the handwritten bail order differed materially from the typed conditions of bail delivered to him at the time he was released on bail.

Pursuant to Pa.R.Crim.P. 521(B)(2), when a defendant's sentence includes imprisonment of two or more years, "the defendant shall not have the same right to bail as before verdict, but bail may be allowed at the discretion of the judge." Pa.R.Crim.P. 521(B)(2). Moreover, "[w]henever bail is . . . revoked[,] the judge shall state on the record the reasons for this decision." Pa.R.Crim.P. 521(C).[22]

At the bail revocation hearing, Detective Simpkins testified that he received an anonymous email, dated January 20, 2025, asking for law enforcement's help because Singh had been frequenting the Temple when children were present, in violation of his bail conditions. *See* N.T. Post-Sentence Motion/Bail Revocation Hearing II, 3/18/25, at 15. Simpkins

---

[22] Instantly, the court left all issues outstanding at an initial bail revocation hearing on February 6, 2025, so that a court-approved Punjabi interpreter could be present for Singh. The notes of testimony from the February 6, 2025 hearing were transcribed into the Punjabi language. *See* N.T. Post-Sentence Motion/Bail Revocation Hearing II, 3/18/25, at 5. In the interim, the court instructed defense counsel that "[b]ased on the assertions that were made earlier today, I would ask [] that you instruct [] Singh not to go to the premises of the [T]emple." N.T. Post-Sentence/Bail Revocation Hearing I, 2/6/25, at 104. The court scheduled the next bail revocation hearing for February 25, 2025. However, after the court extended the time within which to hear the amended post-sentence motion, the second hearing was held on March 18, 2025. *See* Criminal Docket Entries in CP-23-CR-000248102023, at 15.

testified that, on February 3, 2025, he recovered and reviewed video surveillance[23] footage from the Temple, dated Monday, January 20, 2025, at approximately 11:16 a.m., which showed Singh in the Temple's worship room in the presence of a family with a little girl. *Id.* at 45-46. Video footage later that same day shows Singh and the family with the little girl in the Temple's cafeteria at the same time. *Id.* The video footage was played at both bail revocation hearings and entered into evidence. *See id.* at 46-49. Singh never interacted with the child or was closer to her than approximately 20 feet. *Id.* at 53-54. The defense argued that Singh did not know a child was in the Temple's worship room or cafeteria when he entered those rooms. *Id.* at 69-70.

At the conclusion of his bail hearing, the court read the post-sentence bail order into the record, noting the following conditions for Singh: he could have no direct or indirect contact with children under 16 or any contact with minors; and he was prohibited from Temple on Saturdays and Sundays, but may attend religious services after 1 p.m. on weekdays. *See* N.T. Bail Hearing, 12/18/24, at 20-21 ("[H]e's not to be at the [T]emple when juveniles are present, he's to have no contact with minors, minors or anyone under 18 years of age."). In compliance with Rule 521(C), at the second revocation

---

[23] Detective Thomas J. Schriver testified that was trained in video electronic forensics and video recovery and helped Detective Simpkins recover the surveillance video footage from the Temple. *Id.* at 35-38.

J-A12020-26

hearing, the court stated the following reasons for its decision to revoke Singh's bail:

On December 18th, 2024, after the July 12[, 2024] verdict of a jury in this case, I set post[-]sentence bail. . . . The non-financial conditions of bail have been read into the record, both from the transcription of the proceeding and from the bail order. The bail order reads, no direct or indirect contact with children under 16. No contact with minors, prohibited from [T]emple Saturdays and Sundays, may attend religious services after 1 p.m., GPS house arrest. [Singh] is convicted in this case. [Singh] is no longer cloaked in the protection of innocen[ce] unless and until proven guilty by reason of that conviction.

***

However, the evidence presented today in the form of video surveillance provided by the Sikh [T]emple in Millbourne, Delaware County, does demonstrate that on January 20[], 2025, a Monday[,] at approximately 11:15 a.m.[,] Balwinder Singh entered the interior of the Sikh [T]emple[.] That, in and of itself, is a violation of the non-financial requirement of this court's post-conviction bail order. Additionally, on that occasion, the video indicates that a child was present, likely with adult members of that child's family, but[,] nonetheless, a child was present in the [T]emple facility. So, in my notes, three cameras, three views from three separate cameras were provided in the Commonwealth's case in chief. The second camera, at approximately 11:15 a.m., situated in the worship room of the [T]emple facility, provides a view of the child, at least two adults with the child, and [] Singh, in the worship area. [] Singh does not make an effort to withdraw from the facility when it appears obvious, since there were only those persons in the worship room, [] that [] Singh should have recognized a child was present and [] withdrawn [himself] from that [T]emple facility. It was his responsibility to do that, not the family's nor the child's. That, I do find to be a violation, actually two violations, of the non-financial bail requirements this court imposed upon [] Singh on December 18, 2024. Finding [Singh] in violation of the terms of bail, bail is revoked, [] Singh is to be taken into custody at this time. And unless there is anything further for the record, these proceedings are concluded for today.

N.T. Post-Sentence Motion/Bail Revocation Hearing II, 3/18/25, at 73-75.

As the Commonwealth acknowledged at the first revocation hearing, Singh was given very specific bail conditions "to protect the community and to ensure that no one else would be harmed by [him]." N.T. Post-Sentence Motion/Bail Revocation Hearing I, 2/6/25, at 34. *See id.* (Commonwealth indicating bail conditions were "no contact with minors, no being at [T]emple while minors are present"). Without any objection by defense counsel, the court clearly stated when it imposed bail conditions that Singh was "not to be at the [T]emple when juveniles are present, he's to have no contact with minor, minors or anyone under 18 years of age." N.T. Bail Hearing, 12/18/24, at 20-21. Based on the record, we find no abuse of the trial court's discretion when it revoked Singh's post-conviction bail for violating a bail condition by being at the Temple when a child was present. *See* Pa.R.Crim.P. 536(A)(1)(a) ("A person who violates a condition of the bail bond is subject to a revocation of release and/or a change in the conditions of the bail bond by the bail authority.").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2026